[Civ. No. 3330.   Fourth Dist.   Aug. 21, 1944.]

FRED G. GLEESON et al., Appellants, v. C. W. FREEMAN et al., Respondents.

Wright, Thomas & Dorman and Davidson & Bartlett for Appellants.

Fred O'Farrell and E. V. Winnek for Respondents.

BARNARD, P. J.—The plaintiffs brought this action in claim and delivery to recover the possession of certain turkeys, claiming that the same were covered by three chattel mortgages executed by C. W. Freeman.

Gleeson conducted a feed store and C. W. Freeman operated a turkey ranch. To secure certain indebtedness and future advances Mr. Freeman gave three notes and chattel mortgages to Gleeson covering all turkeys on his ranch with the increase thereof and the eggs therefrom. The first mortgage was dated July 10, 1939, the second February 9, 1940, and the third May 27, 1940. In May, 1940, Gleeson assigned the second and third of these notes and mortgages to the Ontario Feed and Milling Company as security for his account with that company.

Mr. Freeman was required under the mortgages to buy his feed and supplies from Gleeson. He also marketed his turkeys through Gleeson, and in the account kept at all times

by Gleeson many payments were credited on these mortgages and various charges were made against Freeman. At the time this action was brought the plaintiffs claimed that Freeman owed Gleeson about $6,000 balance on the three notes.

On November 9, 1940, Belle Freeman married C. W. Freeman and they occupied his ranch during the year 1941. In January, 1941, Gleeson informed Freeman that he would not furnish him feed or finance him longer and Freeman said he would be unable to raise any more turkeys. Freeman was then delivering turkey eggs to Gleeson but certain small or cull eggs were regarded as unsalable for hatching purposes. There is evidence that Gleeson told Freeman he could do what he pleased with these eggs, that Freeman told Gleeson that Mrs. Freeman had money of her own and that he would give these eggs to her and she would raise what turkeys she could, and that Gleeson consented to this arrangement.

Mrs. Freeman hatched out about 1,700 turkeys from these eggs and raised about 1,300 of them. She paid for the feed and other expenses with her own funds and in this connection gave a chattel mortgage on these turkeys to another dealer named Elliott, from whom she purchased some of the feed.

In the fall of 1941, the plaintiffs brought this action to obtain possession of the turkeys thus raised by Mrs. Freeman, claiming that they were covered by their three chattel mortgages. Pursuant to this action the sheriff removed 1,200 turkeys from the Freeman ranch. For some reason in connection with the failure to give a bond, 600 of these turkeys were returned to the Freeman ranch and with the consent of Mrs. Freeman these were turned over to Elliott, to whom she had given a chattel mortgage.

In this action Mr. Freeman filed an answer in which he attacked various charges made against him by Gleeson and claimed that the three chattel mortgages were paid in full. He also alleged that the turkeys in question were owned by his wife. Mrs. Freeman answered and filed a cross-complaint alleging that the turkeys were her separate property, that they were not covered by the mortgages which had been given by her husband before her marriage, and that they were worth $2,500.

The court found that the three notes given by Mr. Freeman to Gleeson had been fully paid; that the turkeys claimed in

this action were not covered by the mortgage; that they were the property of Mrs. Freeman; that Gleeson was the agent of the Ontario Feed and Milling Company; that the sheriff had taken possession of 1,200 turkeys in this proceeding; that they were of the value of $2,400; and that Mrs. Freeman had been damaged in that sum. Judgment was entered that the plaintiffs take nothing and that Mrs. Freeman recover $2,400, with costs. From that judgment the plaintiffs have appealed.

It is unnecessary to consider many of the points discussed in the briefs. The pleadings on each side were insufficient in form and some findings are not supported by the evidence. It may be assumed that the finding that the three notes given by Mr. Freeman had been fully paid falls in this category. However, the record rather indicates that if anything at all was still owed on the original three mortgages, after deducting improper charges, it was very little.

The controlling issue here is whether these turkeys were covered by the mortgages given by Mr. Freeman. The court found to the contrary and that the turkeys belonged to Mrs. Freeman. While sharply conflicting, the evidence supports those findings. The turkeys in question were not produced in the manner contemplated by and provided for in the three chattel mortgages and practically all of their value was produced as a direct result of money, credit and labor furnished by Mrs. Freeman who was not a party to those mortgages. As found by the court, this was done with the consent of Gleeson who released from the mortgages certain eggs which were of small value at best.

The appellants further argue that, regardless of the situation of Gleeson as thus disclosed, the release of these eggs was not binding on the Ontario Feed and Milling Company which had taken an assignment of the three mortgages. It is argued that the only evidence that Gleeson was acting as the agent of that corporation is found in the testimony of Gleeson and his bookkeeper, and that agency cannot be established in that manner. While other evidence in this regard is meager it does appear that the assignment of these mortgages to the corporation was made for security only, and there is considerable evidence of subsequent actions on the part of Gleeson, and of business transacted by him in connection with the property which had been mortgaged, which justifies an inference that he was permitted to and did act as an agent

for the corporation in handling the business in connection with which the mortgages were given and of which they were a part. In our opinion, the evidence is sufficient to sustain the finding of agency and also the finding that these particular turkeys were not covered by the three mortgages.

However, while the court found that 1,200 of these turkeys were taken by the appellants, which were worth $2.00 apiece, it appears without contradiction that 600 of these turkeys were returned to the Freeman farm and were delivered by Mrs. Freeman, or with her consent, to another person to whom she had mortgaged them. So far as here appears, she received the value of these turkeys and no reason has been advanced, and we can find none in the record, why she should be paid twice for these turkeys. It follows that the judgment in her favor should be correspondingly reduced.

That part of the judgment in favor of Belle Freeman is modified by reducing it from $2,400 to $1,200. As thus modified, the judgment appealed from is affirmed. Neither party to recover costs on appeal.

Griffin, J., concurred.